IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 23, 2001

## JERRY L. COX v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. S39,768      R. Jerry Beck, Judge**

---

**No. E2000-02044-CCA-R3-PC**
**April 17, 2001**

---

Jerry L. Cox appeals from the Sullivan County Criminal Court's denial of motions in which he raised various claims related to sentence calculation and sentence validity. In part, Cox seeks the benefit of various sentence credits for the sentence he is presently serving in the Department of Correction. He also alleges that one of his sentences is void or has expired. Because there is no appeal as of right from the denial of Cox's motions challenging his sentences, we dismiss the appeal.

**Tenn. R. App. P. 3; Appeal Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Stephen M. Wallace, District Public Defender; and Terry J. Jordan and Joseph F. Harrison, Assistant Public Defenders, for the Appellant, Jerry L. Cox.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In this action, Jerry L. Cox seeks adjustment of the Department of Correction's calculation of his sentence and a declaration that one of his sentences is either void or, at least, has expired. Cox was convicted in case S39,768 of violation of an habitual motor vehicle offender order, third offense driving under the influence, and misdemeanor evading arrest. He received an effective two year sentence, with 210 days to be served in the county jail and the balance to be served on probation. After he was released on probation, Cox was unsuccessful in leading a lawful lifestyle. His probation was revoked in favor of service of the sentence in the Department of Correction.

Around the time of the revocation, Cox was also convicted of new crimes in case S40,077 and was ordered to serve three years and four months consecutively to his sentence in S39,768. Cox later filed motions, more fully explained below, which challenged the correctness of his sentences or the computation of sentencing credits. The trial court dismissed his motions, and Cox appealed to this court. Upon review, we conclude that there is no appeal as of right from a motion to correct sentencing credit computations, and we therefore dismiss his appeal of the denial of this motion. Although Cox's second set of motions raises potential *habeas corpus* claims, Cox failed to satisfy the statutory requirements for a *habeas corpus* petition, and accordingly no appeal of right is available from the denial of these motions. Furthermore, because the record belies any basis for *sua sponte habeas corpus* relief, we decline to grant a writ of *certiorari* to review any of the denials.

Cox first filed a "Motion to Correct Clerical Error," in which he claimed that he had not received all of the sentence credits to which he was entitled. He sought an order from the Sullivan County Criminal Court that directed the court clerk to notify the Department of Correction of these credits. He subsequently filed a document entitled "Motion to Modify: 'Motion to Correct Clerical Errors' and Motion to Set Aside Illegal, Void/Null Sentence and; [sic] Re-Structure Sentence Imposed." In that filing, he acknowledged receiving credit for certain days he had challenged in the first motion, but he raised claims of entitlement to additional "behavior credits" for these time periods as well as another time period. He alleged that the sentence for violation of the habitual motor vehicle offender order was void because it contained a probation component, although that offense is not probatable. He further complained that Judge Jerry Beck was without authority to conduct a revocation proceeding in case S39,768 because Judge Phyllis Miller, not Judge Beck, imposed the original sentence, and thus, that the sentence was void for this reason, as well. Finally, he claimed that his sentence in S39,768 had expired.

## I. Appellate Jurisdiction

### a. The Trial Court Status of Collateral Attacks on Sentencing Orders.

We must now determine this court's jurisdiction to adjudicate Cox's claims on appeal. To do that, we begin by identifying the nature of the proceeding in the trial court. *See* Tenn. R. App. P. 3(b) (specifying certain types of trial court cases which may form bases for rightful appeals).

Cox's claims fall generally within the rubric of a motion to correct an "illegal sentence," a rubric which has been recently addressed by this court in various cases. *See, e.g., State v. Bruce C. Reliford*, No. W1999-00826-CCA-R3-CD (Tenn. Crim. App., Jackson, Oct. 2, 2000) (alleging trial court was without statutory authority to impose sentence); *Donald Lee Hancock v. State*, No. M1999-00807-CCA-R3-PC (Tenn. Crim. App., Nashville, Aug. 24, 2000); *Paul Barnett v. State*, No. E1999-01853-CCA-R3-CD (Tenn. Crim. App., Knoxville, June 20, 2000) (attempt to correct clerical errors in sentence judgment); *State v. Henry,* 946 S.W.2d 833 (Tenn. Crim. App. 1997) (attempt to correct wrongful denial of pretrial jail credit).

-2-

We discern some confusion abroad concerning the nature and scope of such motions. In the following discussion, we hope to clarify the nature and scope of motions challenging sentences which are filed after the sentencing judgment or order has become final. The key to analyzing these collateral attacks on sentences is to appreciate that the phrase "illegal sentence" as used in our caselaw is a term of art that refers to sentences imposed by a court that is acting beyond its jurisdiction – that is to say, sentences that result from void judgments. The upshot of our analysis will be that *habeas corpus* is the preferred, if not the only, method of collaterally attacking void sentences and that collateral attacks that assert lesser claims of merely erroneous or voidable sentences are generally doomed, unless by nature they fit within some other recognized form of action.

The efficacy of motions to correct sentences that are filed after a trial court's judgment has become final has generally rested upon language in *State v. Burkhart*, 566 S.W.2d 871 (Tenn. 1978). In *Burkhart*, the high court said, "As a general rule, a trial judge may correct an illegal, as opposed to an erroneous, sentence at any time, even if it has become final." *Id*. at 873. In *Burkhart*, the Department of Correction altered the original concurrent service of Burkhart's sentences for burglary and escape in order to comply with the Code's requirement of consecutive service of an escape sentence with the sentence on the underlying offense. *Id*. at 872. Burkhart filed a petition asking the trial court to order the Department of Correction to run the sentences concurrently. *Id*. Thus, the defendant sought to impose the finality of the sentencing judgment so as to block the Department and ultimately the trial court from correcting the judgment. Our supreme court determined that the trial court's original judgment "was in direct contravention of the express provisions" of the statute that required consecutive sentencing and approved the correction of the sentences. *Id*. at 873.

In *State v. Mahler*, 735 S.W.2d 226 (Tenn. 1987), the high court acknowledged the general rule of *Burkhart* that "a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even if it has become final." *Id*. at 228. In *Mahler*, the defendant pleaded guilty to second degree murder and agreed to be sentenced as a Range II offender, despite his prior criminal record being insufficient to justify a Range II classification. *Id*. at 227. Our supreme court, however, turned aside the petitioner's post-conviction attack on the Range II sentence and held that the general rule of *Burkhart* did not apply because the sentencing anomaly was waived by the guilty plea and "at most rendered the sentence subject to attack on direct review by appeal." *Id*. at 228. In other words, the sentence was not illegal or void but was, at most, voidable.

The distinction made in *Mahler* and *Burkhart* between erroneous, voidable sentences on the one hand, and illegal or void sentences on the other, calls to mind the scope of the writ of *habeas corpus*. The writ addresses detentions that result from void judgments or expired sentences. *See Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). A sentencing "judgment is void if the face of the judgment reveals that the court was without jurisdiction or authority to issue it." *State v. Donald Ree Jones*, No. M2000-00381-CCA-R3-CD, slip. op. at 2 (Tenn. Crim. App., Nashville, Oct. 13, 2000).

The phrase "illegal sentence" is synonymous with the *habeas corpus* concept of a "void" sentence. *See* Tenn. Code Ann. §§ 29-21-104, -107(a) (2000) (using the concept of illegal restraint as the object of a writ of *habeas corpus*); *Archer*, 851 S.W.2d at 164 (the purpose of the writ of *habeas corpus* is to address restraints on liberty that result from "void" judgments or from the expiration of the detainee's sentence); *see also Donald Ree Jones*, slip op. at 2 (equating "illegality" of sentence with voidness).

Moreover, a claim that merely asserts a void *sentence*, even though it may not assert a void *conviction*, is cognizable as a *habeas corpus* proceeding. *See Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000) (a void sentence, as well as a void conviction, may result in a void judgment and be the subject of a *habeas corpus* proceeding). In sum, the better method of challenging illegal or void sentences is via an application for a writ of *habeas corpus*.

Typically, however, movants who seek the correction of sentences fail to comply with the prescribed *habeas corpus* procedure. Tennessee Code Annotated section 29-21-107 requires (a) a verified petition stating the specific facts of a petitioner's restraint, (b) the attachment of a copy of the legal process on which the restraint is based, and (c) an affirmation that the claim of illegality of the restraint has not previously been brought and that the application is a first application for the writ, or if not, that a copy of any previous petition and proceedings is presented. Cox has failed to meet these requirements in any of his motions.

We note that despite the requirements for pursuing a *habeas corpus* petition, a court should *sua sponte* grant the writ in certain situations.

> Whenever any court or judge, authorized to grant [the writ of habeas corpus], has *evidence*, *from a judicial proceeding*, that any person within the jurisdiction of such court or officer is *illegally* imprisoned or restrained of his liberty, it is the duty of such court or judge to issue, or cause to be issued, the writ as aforesaid, although no application has been made therefor.

Tenn. Code Ann. § 29-21-104 (2000) (emphasis added).

On the other hand, a motion filed in the trial court to correct a sentence which does not indicate voidness of the sentencing order is generally effete, unless it can be viewed as a Rule 36 motion to correct "[c]lerical mistakes" and "errors in the record arising from oversight or omission," *see* Tenn. R. Crim. P. 36, or as a timely motion to reduce a sentence, *see* Tenn. R. Crim. P. 35.[1] For instance, motions to "correct" a denial of pretrial jail credit filed after the trial court has lost its jurisdiction are unavailing. *See State v. Stephen Mullican*, No. M2000-207-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Sept. 8, 2000) (appeal of denial of motion seeking application of pretrial jail credits dismissed because trial court was without jurisdiction to entertain

---

[1] Of course, claims of constitutional deprivations that have not been waived or previously determined may be brought via the Post-conviction Relief Act. *See* Tenn. Code Ann. §§ 40-30-203, -206(f) (1997).

the appellant's motion when motion was filed after judgment became final); *State v. Frederick Cavitt*, No. E1999-00304-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, July 13, 2000) (trial court "loses jurisdiction over a sentence after an inmate is in the custody of TDOC"); *Larry Ray Fuller v. State*, No. 02C01-9603-CR-00075, slip op. at 2-3 (Tenn. Crim. App., Jackson, Apr. 28, 1997) ("trial court did not have jurisdiction to rule on Appellant's motion" for pretrial jail credit "thirty days after its entry unless a timely notice of appeal or specified post-trial motion is filed" or after the "prisoner is in the custody of the Department"); *Russell Kirby v. State*, No. 03C01-9309-CR-00303, slip op. at 2-3 (Tenn. Crim. App., Knoxville, Aug. 22, 1994) ("petition to receive pretrial jail credit" properly dismissed when petition was filed after trial court's judgment became final; trial court lost jurisdiction when judgment became final, and petitioner lost opportunity to claim pretrial jail credit when he failed to timely appeal the trial court's judgment); *cf. Bruce C. Reliford* (*certiorari* review granted when issue at stake was trial court's jurisdiction to impose a sentence of life without parole when that sentencing option was not statutorily available). *But see State v. Henry*, 946 S.W.2d 834 (Tenn. Crim. App. 1997) (availing the defendant a belated review of pretrial jail credit in light of "unique" circumstances). Also, claims of miscalculations of sentence reduction credits are beyond the pale of the trial court's jurisdiction. *See, e.g., Carroll v. Raney*, 868 S.W.2d 721, 723 (Tenn. Crim. App. 1993).

To summarize, the filing of a motion to correct a final sentencing judgment that is beyond the reach of either Rules 35 or 36, a post-conviction relief petition, or a *habeas corpus* claim, merely begs alms from a trial court whose jurisdiction is depleted. On the other hand, claims that sound in *habeas corpus* - - illegal or void sentence claims - - may be subject to dismissal because they fail to meet the procedural requirements for a *habeas corpus* proceeding, unless it is shown from *evidence heard* that the claimant is illegally restrained and entitled to *sua sponte* relief.

### b. The Appellate Court

The issue of the precise status of the petition or motion in the trial court is important, not only because of the question of the trial court's jurisdiction, but also because of the limited forms of action available for appellate review. We now address the jurisdiction of this court to adjudicate appeals in cases where sentence infirmities are claimed. Generally, trial court orders denying motions to correct sentences are not appealable as a matter of right. Tenn. R. App. P. 3(b); *State v. Donald Ree Jones*, slip op. at 2; *J.D. Hickman v. State*, Nos. E1999-02756-CCA-R3-PC, E2000-00626-CCA-R3-PC (consolidated), slip op. at 4-5 (Tenn. Crim. App., Knoxville, Sept. 27, 2000). The same holds true when a claimant raises *habeas corpus* issues but proceeds in the trial court in a manner that does not meet the requirements for a *habeas corpus* proceeding. *See J. D. Hickman*; Tenn. Code Ann. § 29-21-127(a) (2000). In the latter situation, the use of a nonconforming form of action deprives the claimant of a rightful appeal. Such is the case with respect to Cox's motion that claimed his sentence in S39,768 was void and had expired..

On the other hand, with sentencing infirmities that result in illegal or void sentences and that are addressed via a statutorily compliant *habeas corpus* proceeding, the petitioner enjoys a right to appellate review of a denial of the claim. *See* Tenn. Code Ann. § 29-21-127(a) (2000);

Tenn. R. App. P. 3(b). In addition, we have on occasion reviewed illegal sentence claims via the common law writ of *certiorari*. *See Donald Ree Jones*, slip op. at 3; *State v. Bruce C. Reliford*, slip op. at 3. We emphasize, however, that "the common law writ of *certiorari* is limited in application." *Donald Ree Jones*, slip op. at 3 (italics supplied). The writ is used to address an inferior tribunal "exceeding its jurisdiction" or acting illegally, when "there is no other plain, speedy or adequate remedy." *See* Tenn. Code Ann. § 27-8-101 (2000). Thus, appeals via *certiorari* should rarely be granted to review motions that assert sentencing infirmities which do not rise to the level of illegality or voidness.

## II. Cox's Claims

In his motions, Cox has alleged a hodgepodge of claims, some of which assert only a denial, or faulty computation, of sentencing credits, and others which allege a void judgment or that a sentence has expired. *See J.D. Hickman*, slip op. at 8 (making distinctions among the types of "illegal" sentencing challenges which have been addressed by this court). We will address these two "types" of claims separately.

### a. Sentence Credits

First, we address Cox's initial motion containing his claim of entitlement to various credits. We begin by recalling that Cox's original, effective sentence in S39,768 was two years, with 210 days to be served in jail and the balance to be served on probation. Cox initially claimed entitlement to 210 days for the initial jail time, credit for 96 days served locally prior to disposition of the revocation warrant, and 150 days credit for 75 days he served as a Sullivan County Jail trustee. In his "Motion to Modify," filed as a part of the second conglomeration of motions, however, he in essence amended his first motion and acknowledged receiving credit for these days. He claimed, instead, that he was entitled to additional "behavior credits" for the above days and for 47 days he served in pretrial confinement. On appeal, Cox has pursued only the claim for "behavior credits." We now consider this claim to be a modification of his first motion which addressed sentencing credits. He does not now raise an issue of proper awards of the 210-, 96- and 75-day periods themselves.

Based upon our analysis in section I above, we are unable to consider Cox's arguments relative to entitlement to various sentence credits, because we lack jurisdiction to entertain the appeal of the denial of his initial motion, as amended, to correct his sentencing credits or the computation thereof. Cox did not meet the requirements for a petition for writ of *habeas corpus*, and in any event, the credit and computation claims are not cognizable as *habeas corpus* claims; hence, a Rule 3 appeal is not available. Moreover, we discern no basis for conducting review via a writ of *certiorari*. *See generally* Tenn. Code Ann. § 27-8-101 (2000).

### b. Sentencing Issues

The remaining issues argued in Cox's appellate brief all pertain to the viability of Cox's sentence in S39,768. In his second compilation of motions, he makes two allegations of voidness – first, that the sentence is void *ab initio* because it contains an illegal probation component, and second, that it is void because Judge Beck lacked jurisdiction to conduct a revocation proceeding. Finally, he claims that this sentence has expired.

As noted above, Cox did not comply with Code section 29-21-107, and accordingly, he has presented no *habeas corpus* petition, the denial of which could be reviewed on appeal as a matter of right. We must determine whether we should grant review via the common law writ of *certiorari.*

The trial court conducted a hearing, which was attended by Cox's counsel but not by Cox himself. The court only addressed the sentencing or behavior credit issues. Cox's counsel acknowledged the sentencing credits based upon local confinement were "correct," and the trial judge expressed his view that matters of sentencing reduction credits would be issues for Cox to resolve through the Department of Correction, not the trial court. The trial court then summarily dismissed the pending motions and directed Cox "to file any computation of his time by the Department of Correction[] in the Chancery Court for Davidson County, Tennessee should the matter not be resolved administratively."

The trial court did not discuss Cox's claims contained in his second compilation of motions that sound in *habeas corpus*; however, we are able to discern from governing law and the record before us that any claims sounding in *habeas corpus* relief are unfounded as a matter of law.

We begin by acknowledging that Tennessee Code Annotated section 55-10-616(c) provides that the trial "court has no power to suspend" an habitual motor vehicle offender sentence and that, despite Cox's conviction pursuant to this statute, a portion of his sentence was probated. *See* Tenn. Code Ann. § 55-10-616(c) (1998). The statute, however, also provides that when the offense occurs in extreme emergencies, the trial court may suspend the sentence. Thus, the trial court is not devoid of the power to probate the sentence, only limited. In this respect, the fact that the judgment reflects that the petitioner received a partially suspended sentence does not show that the court was without jurisdiction to act so as to make the judgment void.

Cox next complains that his probation in case S39,768 was revoked by a different judge than the one who placed him on probation and that, therefore, the resulting incarceration order is void. Cox relies upon this court's ruling in *State v. Duke*, 902 S.W.2d 424 (Tenn. Crim. App. 1998). In *Duke*, a direct appeal of a probation revocation, we vacated the revocation order and remanded the case to the trial court for a determination of whether the sentencing judge was unavailable when a second judge conducted the revocation proceeding. *Id.* at 426. The ruling was based upon the erstwhile version of Tennessee Code Annotated section 40-35-311(b), which provided that when a probation revocation proceeding is commenced, "the trial judge granting such probation and suspension of sentence, or his successor, shall . . . determine whether a violation has

occurred." *Duke*, 902 S.W.2d at 426 (quoting the then-applicable version of Tenn. Code Ann. § 40-35-311(b)).

*Duke* is not applicable, however, to the present case. In 1997, the legislature amended Code section 40-35-311(b) by adding the following emphasized language: "[T]he trial judge granting such probation and suspension of sentence, *the trial judge's* successor, *or any judge of equal jurisdiction who is requested by such granting trial judge to do so* shall . . . determine whether or not a violation has occurred." *See* Tenn. Code Ann. § 40-35-311(b) (1997). Cox's probation was revoked on February 12, 1999, long after the 1997 amendment took effect. The record reflects that, on November 24, 1998, Judge Phyllis Miller, the original sentencing judge, entered an order transferring Cox's cases to Judge Jerry Beck, the revocation judge, "for good cause shown." Thus, Cox's probation revocation complied with Code section 40-35-311(b). Moreover, had there been an anomaly in meeting the statutory dictates on this point, it would not have rendered void the revocation order. *See State v. Billy Gene Oden, Jr.*, No. 01C01-9710-CC–00468 (Tenn. Crim. App., Nashville, Dec. 7, 1998) (apparent failure to comply with the request provisions of the 1997 version of section 40-35-311(b) created no opportunity to avoid the revocation when the defendant acquiesced in the substitution of judges and made no contemporaneous objection). Thus, the substitution of judges in the present case provides no basis for *habeas corpus* relief.

Finally, Cox's claim that his sentence in case S39,768 has expired articulates a *habeas corpus* claim, but the record amply demonstrates that, even if his sentence in S39,768 has expired, his aggregate sentence, which resulted from the consecutive service of S40,077 with S39,768, has not expired. Therefore, he is not entitled to be released, and his *habeas corpus* claim is not ripe. *See Ussery v. Avery*, 222 Tenn. 50, 55-56, 432 S.W.2d 656, 658 (1968); *State ex rel. Stewart v. McWherter*, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992).

Thus, because the claims of sentence voidness and sentence expiration are unfounded as a matter of law, there is no basis for a writ of *certiorari*, and the writ is denied.

### III. Conclusion

For the reasons above explained, the appeal from the denial of all of Cox's first motions is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-8-